## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **A&Z Home Buyer, LLC**<br>1835 Lakeview Dr. East, Lake Ariel, PA 18436 | : | |
| | : | |
| | : | |
| **Lori Adam**<br>46 Cliffwood Road, Lake Ariel, PA 18436 | : | |
| | : | |
| | : | CIVIL ACTION NO. |
| **Brian Aranda and Lindsay Alexander**<br>2658 Rockway Road, Lake Ariel, PA 18436 | : | |
| | : | |
| | : | |
| **Kyle Berger**<br>30 Woodview Terrace, Lake Ariel, PA 18436 | : | |
| | : | |
| **LeeAnna and Otto Chan**<br>2613 Boulder Ct., Lake Ariel, PA 18436 | : | |
| | : | |
| | : | |
| **Dobenizabe, LLC**<br>3754 Thornwood Terrace, Lake Ariel, PA 18436 | : | |
| | : | |
| | : | |
| **Glitter PA Investments, LLC**<br>1204 Lakeview Dr., W., Lake Ariel, PA 18436 | : | |
| | : | |
| **92 S LLC**<br>2894 N. Fairway Dr., Lake Ariel, PA 18436 | : | |
| | : | |
| | : | |
| **Andrew Fetterman**<br>87 N. Fairway Dr., Lake Ariel, PA 18436 | : | |
| | : | |
| | : | |
| **Desiree Garcia and**<br>**Fernando Pineros Rincon**<br>2004 Roamingwood Rd., Lake Ariel, PA 18436 | : | |
| | : | |
| | : | |
| **Daniela Gasan**<br>1008 Forest Lane, Lake Ariel, PA 18436 | : | |
| | : | |
| **Loreen Goldstock**<br>3958 Par Dr., Lake Ariel, PA 18436 | : | |
| | : | |

1997725-1

**Donovan Hayes**                                      :
**Joel Hannigan**                                      :
**Matthew Sider**                                      :
**Nicholas Sider**                                     :
1184 Wildwood Terrace, Lake Ariel, PA 18436            :
                                                       :
**Victoria Hayes**                                     :
**Donovan Hayes**                                      :
**Matthew Sider**                                      :
**Nicholas Sider**                                     :
1054 Wildwood Terrace, Lake Ariel, PA 18436            :
                                                       :
**Robert Hebron**                                      :
1970 Lakeview Dr., E., Lake Ariel, PA 18436            :
                                                       :
**Bradley Kreider**                                    :
1994 Lakeview Dr., Lake Ariel, PA 18436                :
                                                       :
**Karen Kroog**                                        :
14056 Woodview Ter., Lake Ariel, PA 18436              :
                                                       :
**Jennifer Lenzo**                                     :
2674 Rockway, Lake Ariel, PA 18436                     :
                                                       :
**Thais Martinez**                                     :
2384 Meadowview Dr., Lake Ariel, PA 18436              :
                                                       :
**Michele McFadden**                                   :
983 Brentwood Dr., Lake Ariel, PA 18436                :
                                                       :
**Michele McFadden and Pamela Gerolimatos**            :
972 Forest Ln., Lake Ariel, PA 18436                   :
                                                       :
**Ryan McNamee**                                       :
1219 Lakeview Dr., W., Lake Ariel, PA 18436            :
                                                       :
**Jerry Notaro and J Notaro Construction,**            :
**LLC**                                                :
1228/337 Lakeview Dr., W, Lake Ariel, PA               :
18436                                                  :

2

**Rafael Poueriet**
3195 Northgate Rd., Lake Ariel, PA 18436      :
                                              :
**Samantha Rex**                              :
239 Chestnut Hill Dr., Lake Ariel, PA 18436   :
                                              :
**Dustin Rex**                                :
1051 Wildwood Terr., Lake Ariel, PA 18436     :
                                              :
**Roamingwood Investment Group LLC**          :
49 Roamingwood Ct., Lake Ariel, PA 18436      :
                                              :
**Christopher Serrano**                       :
1419 Woodview Ter., Lake Ariel, PA 18436      :
                                              :
**Samantha Shiffman**                         :
3287 Northgate Rd., Lake Ariel, PA 18436      :
                                              :
**Kalpana M. Singh-Castillo**                 :
679 Lakeview Dr., Lake Ariel, PA 18436        :
                                              :
**Justin Spall**                              :
3959 Par Dr., Lake Ariel, PA 18436            :
                                              :
**The Woodhill Hideout LLC**                  :
1503 Woodhill Ln., Lake Ariel, PA 18436       :
                                              :
**Kyle Thompson**                             :
59 Woodcrest Ln., Lake Ariel, PA 18436        :
                                              :
**Shelby Viasso**                             :
7 Wildwood Terrace, Lake Ariel, PA 18436      :
                    *Plaintiffs,*             :
          v.                                  :
                                              :
**Lake Township**                             :
15 Township Building Road                     :
P.O. Box 278                                  :
Hamlin, PA 18427                              :
                    *Defendant.*              :

3

1997725-1

## COMPLAINT

Plaintiffs, as above captioned, by and through their counsel, Timoney Knox, LLP, respectfully file this Complaint against Defendant Lake Township, Wayne County, Pennsylvania ("Township") and aver as follows:

## NATURE OF ACTION

1.      Plaintiffs bring this action under 42 U.S.C. 1983, and supplemental Pennsylvania state law, in connection with Lake Township's adoption of Ordinance "TBD" of 2022 dated September 6, 2022 of Lake Township, Wayne County and codified in Chapter 340 of the Lake Township Code ("Ordinance")[1].

## THE PARTIES

### Plaintiffs

2.      Plaintiff, A & Z Home Buyer LLC ("A & Z") is a limited liability company incorporated in New York and is the record owner of Lot 1835 within the Association of Property Owners of the Hideout, Inc.,[2] located at 1835 Lakeview Dr. East, Lake Ariel, PA 18436.

---

[1] At no time, to Plaintiffs' knowledge or notice, has the Ordinance appeared with an ordinance number other than "TBD."  A true and correct copy of the Ordinance as executed and signed by the Lake Township Board of Supervisors is attached hereto as Exhibit "A."  A true and correct copy of the Ordinance as codified in Chapter 340 of the Lake Township Code is attached hereto as Exhibit "B."

[2] The Hideout is a community with a homeowners association located in Wayne County, Pennsylvania. The "Hideout," as referenced herein, refers interchangeably to the community and the association governing the community.

4

3.      Plaintiff, Lori Adam ("Adam") is an adult individual and is the record owner of Lot 3473 within the Hideout, located at 46 Cliffwood Road, Lake Ariel, PA 18436.

4.      Plaintiffs, Brian Aranda ("Aranda") and Lindsay Alexander ("Alexander") are adult individuals and are the record owners of Lot 2658 within the Hideout, located at 2658 Rockway Road, Lake Ariel, PA 18436.

5.      Plaintiff, Kyle Berger ("Berger") is an adult individual and is the record owner of Lot 1404 within the Hideout, located at 30 Woodview Terrace, Lake Ariel, PA 18436.

6.      Plaintiffs, LeeAnna Chan and Otto Chan (together, "Chan") are adult individuals and are the record owners of Lot 21 within the Hideout, located at 2613 Boulder Court, Lake Ariel, PA 18436.

7.      Plaintiff, Dobenizabe, LLC, ("Dobenizabe") is a Pennsylvania limited liability company and is the record owner of Lot 3754 within the Hideout, located at 3754 Thornwood Terrace, Lake Ariel, PA 18436.

8.      Plaintiff, Glitter PA Investments, LLC, ("Glitter") is a Pennsylvania limited liability company and is the record owner of Lot 1204 within the Hideout, located at 1204 Lakeview Drive W, Lake Ariel, PA 18436.

9.      Plaintiff, 92 S LLC is a limited liability company incorporated in Pennsylvania and is the record owner of Lot 2894 within the Hideout, located at 2894 S. Fairway Drive, Lake Ariel, PA 18436.

10.     Plaintiff, Andrew Fetterman ("Fetterman") is an adult individual and is the record owner of Lot 4317 within the Hideout, located at 87 N Fairway Drive, Lake Ariel, PA 18436.

11.     Plaintiffs, Desiree Garcia ("Garcia") and Fernando Pineros Rincon ("Rincon") are adult individuals and are the record owners of Lot 30 within the Hideout, located at 2004 Roamingwood Road, Lake Ariel, PA 18436.

12.     Plaintiff, Daniela Gasan ("Gasan") is an adult individual and the record owner of Lot 1007 and Lot 1008, located at 1008 Forest Lane, Lake Ariel, PA 18436.

13.     Plaintiff, Loreen Goldstock ("Goldstock") is an adult individual and is the record owner of Lot 6 within the Hideout, located at 3958 Par Drive, Lake Ariel, PA 18436.

14.     Plaintiffs, Donovan Hayes ("Hayes"), Joel Hannigan ("Hannigan"), Matthew Sider ("Matthew Sider"), and Nicholas Sider ("Nick Sider") are all adult individuals and are all the record owners of Lot 66 within the Hideout, located at 1184 Wildwood Terrace, Lake Ariel, PA 18436.

1997725-1

15.     Plaintiffs, Donovan Hayes and Victoria Hayes ("Victoria Hayes") and Matthew Sider and Nicholas Sider are adult individuals and are the record owners of Lot 1054, known as Wayne County Parcel I.D. No. 12-0-0017-0061 and Reference Tax Map No. 12-17-61, within the Hideout.

16.     Plaintiff, Robert Hebron ("Hebron") is an adult individual and is the record owners of Lot 1970 within the Hideout, located at 1970/609  Lakeview Drive E, Lake Ariel, PA 18436.

17.     Plaintiff, Bradley Kreider ("Kreider") is an adult individual and is the record owners of Lot 636 within the Hideout, 1994 East Lakeview Drive, Lake Ariel, PA 18436.

18.     Plaintiff, Karen Kroog ("Kroog") is an adult individual and is the record owner of Lot 36 within the Hideout, located at 1406 Woodview Terrace, Lake Ariel, PA 18436.

19.     Plaintiffs, Jennifer Lenzo and Michael Lenzo (together, "Lenzo") are adult individuals and are the record owners of Lot 45 within the Hideout, located at 2674 Rockway, Lake Ariel, PA 18436.

20.     Plaintiff, Thais Martinez ("Martinez") is an adult individual and is the record owner of Lot 2384 within the Hideout, located at 2384 Meadowview Dr., Lake Ariel, PA 18436.

1997725-1

21.     Plaintiff, Michele McFadden ("McFadden") is an adult individual and the record owner of Lot 983 within the Hideout, located at 983 Brentwood Drive, Lake Ariel, PA 18436

22.     Plaintiffs, Pamela Gerolimatos ("Gerolimatos") and McFadden are adult individuals and are the record owners of Lot 972 within the Hideout, located at 972 Forest Lane, Lake Ariel, PA 18436.

23.     Plaintiff, Ryan McNamee ("McNamee") is an adult individual and is the record owner of property of Lot 1219 within the Hideout, located at 1219 Lakeview Drive West, Lake Ariel, PA 18436.

24.     Plaintiffs, Jerry Notaro is an adult individual and J Notaro Construction LLC (together, "Notaro") is a limited liability company and are the record owners of Lot 1228/337 within the Hideout, located at 1228/337 Lakeview Drive West, Lake Ariel, PA 18436.

25.     Plaintiff, Rafael Poueriet ("Poueriet") is an adult individual and is the record owners of Lot 3195 within the Hideout, located at 3195 Northgate Road, Lake Ariel, PA 18436.

26.     Plaintiff, Samantha Rex ("Samantha Rex") is an adult individual and is the record owner of Lot 4240 within the Hideout, located at 239 Chestnut Hill Drive, Lake Ariel, PA 18436.

27.     Plaintiff, Dustin Rex ("Dustin Rex") is an adult individual and is the record owner of Lot 63 within the Hideout, located at 1051 Wildwood Terrace, Lake Ariel, PA 18436.

28.     Plaintiff, Roamingwood Investment Group, LLC, ("Roamingwood") is a New Jersey limited liability company and is the record owner of Lot 1794 within the Hideout, located at 49 Roamingwood Court, Lake Ariel, PA 18436.

29.     Plaintiff, Christopher Serrano ("Serrano") is an adult individual and is the record owner of property within the Hideout, located at 1419 Woodview Terrace, Lake Ariel, PA 18436.

30.     Plaintiff, Samantha Shiffman ("Shiffman") is an adult individual and is the record owner of Lot 3287 within the Hideout, located at 3287 Northgate Road, Lake Ariel, PA 18436.

31.     Plaintiff, Kalpana M. Singh-Castillo d/b/a Willow's Place ("Castillo") is an adult individual and is the record owner of Lot 1836 within the Hideout, located at 679 Lakeview Drive East, Lake Ariel, PA 18436.

32.     Plaintiff, Justin Spall ("Spall") is an adult individual and is the record owner of Lot 3959 within the Hideout, located at 3959 Par Drive, Lake Ariel, PA 18436.

9

33.     Plaintiff, The Woodhill Hideout LLC ("Woodhill") is a limited liability company incorporated in Pennsylvania and is the record owner of Lot 1503 within the Hideout, located at 1503 Woodhill Lane, Lake Ariel, PA 18436.

34.     Plaintiff, Kyle Thompson ("Thompson") is an adult individual and is the record owner of Lot 1460 within the Hideout, located at 59 Woodcrest Lane, Lake Ariel, PA 18436.

35.     Plaintiff, Shelby Viasso ("Viasso") is an adult individual and is the record owner of Lot 821 within the Hideout, located at 7 Wildwood Terrace, Lake Ariel, PA 18436.

## **Defendant**

36.     Defendant Lake Township is a Pennsylvania Second Class Township located in Wayne County, Pennsylvania ("The Township").

## **JURISDICTION AND VENUE**

37.     This action arises under 42 U.S.C. § 1983 and for violations of the laws of the Commonwealth of Pennsylvania.

38.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and under the principles of supplemental jurisdiction, 28 U.S.C. §1367.

39.     Defendant is subject to the personal jurisdiction of this Court under the United States Constitution, the United States Code, the laws of the

10

Commonwealth of Pennsylvania, and the Federal Rules of Civil Procedure.

40.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b), (c), and (d) because all material transactions and occurrences giving rise to the claims herein transpired in the said District and the Defendant is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

41.     Each of the Plaintiffs' Lots are located within Lake Township, Wayne County, Pennsylvania.

42.     Each of the Plaintiffs did, does now, or intends to in the future utilize his or her real property[3] as a Short-Term Rental ("STR").

43.     Each of the Plaintiffs are subject to the application and enforcement, or imminent application and enforcement, of the Ordinance.

44.     Each of the Plaintiffs are taxpayers of the Township.

45.     The Township is a Second Class Township governed by 53 P.S. § 65101, *et seq*.

46.     As a Second Class Township, the Township is administered and governed by a board of supervisors ("Supervisors").

---

[3] All of Plaintiffs' Lots are collectively referred to herein as "Properties;" each a "Property." Each of the Properties is improved with a home.

1997725-1

47.     Second Class Townships are limited only to those powers which are expressly or implicitly granted to it by the legislature.

48.     The Township enacted the Ordinance on September 6, 2022.

49.     The Ordinance states an effective date of January 3, 2023.

### Short-Term Rentals

50.     Lake Township is located in Wayne County, one of the four (4) counties in Pennsylvania which comprise the Pocono Mountains.[4]

51.     The Poconos Mountains are a popular tourist destination for families for outdoor recreation and weekend getaways.

52.     Plaintiffs' Properties are situated within the Hideout, located in Wayne County, PA.

53.     The Hideout is a homeowners association organized to create and administer rules and regulations for the approximately 4,000 lot community within which Plaintiffs' Properties are located.[5]

54.     According to the 2010 US Census, the Township has a total population of 5,269.

---

[4] *See*   https://www.poconomountains.com/plan-your-vacation/explore-our-area/pocono-mountains-counties/, last accessed January 17, 2023.

[5] The Hideout is a named defendant in a similar, yet unrelated, lawsuit regarding the Hideout's improper adoption, enforcement, and enactment of a bylaw that restricts STRs and charges substantial fees, similar to that of the Ordinance.

1997725-1

55.     The Hideout actively sought to implement its own restrictions upon a property owner's ("Homeowner") ability to rent their property on a short-term basis, including each of the Plaintiffs and their Properties.

56.      Plaintiffs utilize their Properties' desirable location in the Pocono Mountains by engaging in leasing to individuals and families on a short-term basis.

57.     For many Homeowners, including each of the Plaintiffs, STRs provide supplemental income, cover mortgage payments, or otherwise generate income from an unoccupied home while they are away.

58.     Online STR marketplaces, such as Airbnb and VRBO, allow Homeowners, such as Plaintiffs, to rent their properties on a long-term or short-term basis, with relative ease.

59.     The Ordinance, defines STRs as "Any dwelling unit within a residential building, structure or dwelling which is rented for overnight lodging for a period of not less than one (1) day and not more than twenty-nine (29) days." *See* Ex. "A" at § 2.

60.     Township officials view individuals who rent property on a short-term basis as "outsiders," categorizing them as "transitory" occupants.

61.     The Township seeks, at times with cooperation and/or support from the Hideout, to reduce the number of short-term renters in the community.[6]

---

[6] Officials from the Hideout, including Hideout Community Manager Larry Frotten, have encouraged and supported strict regulations on STRs. *See* Lake Township Meeting Minutes, dated

62.    The Board of Directors of the Hideout proposed the aforementioned STR bylaw amendment for a vote in May of 2022, ending the voting period in late June of 2022.

63.    The Hideout STR bylaw amendment passed by a mere simple majority of votes cast, and as of January 1, 2023, the STR bylaw is effective.

64.    It is upon information and belief that representatives for the Hideout communicated and coordinated with representatives of Lake Township regarding the Hideout's enactment, implementation, and enforcement of the STR bylaw.

65.    The Township's generalized fear of STRs, and of the alleged "outsiders," is due to the Township's belief that all STRs are "detrimental" to the community for various irrational reasons.

66.    As set forth more fully below, the justifications the Township relies upon to enact the Ordinance are inapplicable and/or not relevant.

67.    By way of example, the Ordinance's stated goal is to "maintain a rural and recreational character of the Township."  *See* Ex. "A" at § 2F.

---

September 6, 2022 and attached hereto as Exhibit "C" ("Mr. Larry Frotten property Manager at the Hideout wish to Thank [sic] the Supervisors for moving on enforcement of Short-Term Rentals").  *See also*, Email from Salem Township dated January 26, 2023 and attached hereto as Exhibit "D" (enclosing communications between the Hideout and Salem Township and forwarded to Lake Township).

68.     By way of further example, the Township acknowledges that it views STR occupants as "outsiders" by unfoundedly declaring STRs have "detrimental effects" on the Township.  *See* Ex. "A" at § 2.

69.     In fact, STR occupants of Plaintiffs' Properties are predominantly families vacationing for a week or a long weekend.

70.     As explained more fully below, the Ordinance restricts overnight occupancy to two (2) individuals per bedroom.

71.     The regulations contained in the Ordinance preclude families from engaging in STRs due to the fact that occupancy limits are tied to the number of bedrooms the dwelling contains.

72.     The Ordinance precludes many families who may have rented Plaintiffs' Properties in the past from doing so now or in the future.

73.     For example, a ten (10) person family ("Example Family") with two (2) grandparents, their two (2) adult children, each with their two (2) spouses, and four young (4) grandchildren is now necessarily required to rent a five (5) bedroom dwelling under the current Ordinance, for any period under 30 days.

74.     It is therefore undisputed that the Example Family would have been permitted to rent one (1) of Plaintiffs' three (3) bedroom Properties last year or could even lease a three (3) bedroom Property this year, for any period *longer* than 30 days – but may not now lease the dwelling for any period *less than* 30 days.

75.   According to the Township, through the Ordinance, it is necessary to require the Example Family to rent a five (5) bedroom dwelling in order to avoid the "detrimental effects" on the Township and to "maintain a rural and recreation character."  *See* Ex. "A" at § 2 (F).

76.   According to the Township, through the Ordinance, Plaintiffs with Properties containing less than five (5) bedrooms are ineligible to rent to the Example Family for any period of time under thirty (30) days but may do so for longer than thirty (30) days.

77.   Further, each of the Plaintiffs has suffered money damages by the Ordinance in that they:

      a.   Have lost STR rental income and rental opportunities in the future ("STR Rental") because their Properties' occupant capacities are now unlawfully limited by the Ordinance;

      b.   Have lost STR rental income because of the unreasonable and unlawful limitations placed upon their Properties and engaging in STR by the Ordinance, including them and their guests being subject to warrantless searches and limitations on the number of guests and visitors now permitted at their Properties;

      c.   Have lost property value as a result of the unlawful Ordinance, restricting a property right, that is, the right to engage in STRs;

16

d.   Have lost the value of improvements to their Properties made to lawfully and peaceably engage in STRs, prior to the enactment of the Ordinance;

e.   Have lost the value of their good will and reputation grown, curated and established by each of them in connection with their engagement in STRs, including on various STR platforms, including, but not limited to, Airbnb and VRBO;

f.   Have lost all or a part of their monetary investment into each of the foregoing;

g.   Will continue to suffer such losses for as long as the unlawful and illegal Ordinance is in effect.

78.   Further, each of the Plaintiffs is adversely affected by the Ordinance now, or imminently, because Plaintiffs did, do now, or intend to engage in STRs within the Township and are thereby subject to the Ordinance and each of its provisions.

79.   As set forth more fully below, there is no difference between a home rented long-term and a STR; the same regulations are necessary to ensure the safety of the occupants and community whether the home is occupied for five (5) days or three hundred and sixty-five (365) days, or twenty-nine (29) days or thirty (30) days.

17

80.    As set forth more fully below, the Township seeks, through the Ordinance, to regulate the behavior of only these "transitory" "outsiders" by placing onerous restrictions on those they define as engaged in STRs, but not the very same behavior of those who are not engaged in STRs.

## The Ordinance

81.    Section 2 of the Ordinance, entitled "Findings and Purpose" states, in part:

> The Board of Supervisors of Lake Township, Wayne County, Pennsylvania, have a duty to provide for the health, safety and general welfare of its citizens within the Township, and to protect all property owners and residents from the detrimental effects of unregulated short-term rentals in the Township.

> *See* Ex. "A" at § 2.

82.    Section 2 of the Ordinance further states:

> A.    Short-term rental of dwellings and structure within the Township have become a significant segment of the local tourism economy

> B.    Short-term rentals provide a community benefit by expanding the lodging facilities available within the Township, while assisting owners of short-term rental properties by providing revenue which may be used for maintenance and upkeep of the structures, as well as providing income to said individuals.

*See* Ex. "A" at § 2(A) and (B).

83.     Further, the Ordinance states the reasoning and/or justification for restricting STRs and establishing civil and criminal penalties for violations as:

C.      The Board of Supervisors have received numerous complaints regarding excessive noise and trespass disturbances experienced by neighboring property owners. The Township Sewer Enforcement Officer has concerns regarding the on-site septic system capabilities, and the effect of failing septic systems upon ground water and surface water entering streams, lakes and rivers from untreated sewage effluent being emitted from overcharged systems.

D.      Occupants of short-term rentals are generally transitory in nature, and enforcement against said occupants is often difficult.

E.      An Ordinance to regulate short-term rentals is necessary to assure that all units meet fire and safety codes, including fire suppression devices, and alarms for fire and carbon monoxide, to assure the safety of all occupants.

F.      The provisions of this Ordinance are intended to address all of the above concerns and to assure all occupants that the short-term rental units are safe to occupy, that the rental units comply with on-site sewage requirements, and to maintain a rural and recreational character of the Township for all residents, homeowners and visitors to enjoy.

*See* Ex. "A" at § 2(C)-(F).

84.     Interestingly, the stated purposes in Section 2 of the Ordinance include regulating *only* STRs to ensure that all units meet fire and safety codes, including

19

fire alarms, carbon monoxide alarms, and to regulate the effects of failing septic systems.

85.     Upon information and belief, the Township does not have its own "fire and safety codes" as stated in Section 2(E) of the Ordinance.

86.     The Ordinance regulates everything from occupancy, to noise levels, to parking, and exterior lighting under the guise of providing "for the health, safety and general welfare of its citizens within the Township," to assure "that all units meet fire and safety codes, including fire suppression devices, and alarms for fire and carbon monoxide, to assure the safety of all occupants." *See* Ex. "A" at § 2.

87.     The Township seeks – through the Ordinance – to regulate the behavior of only "outsiders" and those renting to them, such as the Plaintiffs, by placing onerous restrictions on only those it defines as engaged in STRs, but fail to restrict the same behavior of those who are not engaged in STRs.

88.     The Township justifies the Ordinance by expressing concerns over the ability of septic systems to handle increased use and over-charges of the system. *See* Ex. "A" at § 2C.

89.     However, none of the Plaintiffs have a septic system and all are connected to a private sewer system.

90.     Thus, sewage is not a concern whatsoever for STR of the Properties.

91.    Section 66506 of the Second Class Township Code authorizes a township's board of supervisors to:

> make and adopt any ordinances, bylaws, rules and regulations not inconsistent with or restrained by the Constitution and laws of the Commonwealth necessary for the proper management, care and control of the township and its finances and the maintenances of peace, good government, health, and welfare of the township and its citizens, trade, commerce and manufacturers.

*See* 53 P.S. § 66506.

92.    As alleged herein, Lake Township's Short Term Rental Ordinance is illegal, unconstitutional, exceeds the Township's authority, or otherwise a violation of a Plaintiffs' rights because:

a.    The Ordinance violates the Plaintiffs' Fourth Amendment right to be free from unreasonable searches;

b.    The Ordinance violates the Plaintiffs' First Amendment right to assembly;

c.    The Ordinance imposes an unlawful fee for a STR Permit, as defined herein;

d.    The Ordinance violates the Plaintiffs' Fourteenth Amendment right to procedural due process;

e.    The Ordinance violates Plaintiffs' rights to substantive due process under the Pennsylvania Constitution;

21

f.      The Ordinance violates the Plaintiffs' rights to substantive due process under the Fourteenth Amendment;

g.      The Ordinance is unconstitutionally vague;

h.      The Ordinance is an abuse of the Township's police power and creates an unlawful and unenforceable nuisance per se;

i.      The Ordinance is arbitrary and capricious;

j.      The Ordinance is an abuse of the Township's police power as it is, in effect, an invalid zoning ordinance; and

k.      The Ordinance violates the dormant commerce clause.

**The Ordinance Authorizes Unconstitutional Warrantless Searches**

93.     Section 13 of the Ordinance – "Inspections and Access" – provides that "[a]ll places and premises in Lake Township shall be subject to inspection by the enforcement officer to verify application, permit or operating requirements or if there is reason to believe that any provision of this Ordinance is being violated."

94.     However, the Ordinance fails to provide any guidelines, conditions, or procedures for when and how the inspections ("Inspections") pursuant to Section 13 are to occur.

95.     The Ordinance fails to subject the Inspections to constitutional restrictions.

1997725-1

96.    The Ordinance fails to provide that the Township shall obtain a warrant to conduct Inspections.

97.    Further, the Inspection must be conducted by the Enforcement Officer, specifically appointed by the Board of Supervisors, pursuant to Section 13(A) of the Ordinance.

98.    The Ordinance grants the Enforcement Officer unfettered discretion in deciding if, when, and where, to conduct an Inspection of a Homeowner's Property, with no requirement to give notice.

99.    The Enforcement Officer may conduct an Inspection into a home within the Township, including the home of any of the Plaintiffs, merely "if there is reason to believe that any provision of [the] Ordinance is being violated." *See* Ex. "A" at § 13(A).

100.    The "reason to believe that any provision of this Ordinance is being violated" is not a lawful standard for a warrantless search under the Fourth Amendment.

101.    There are no reasonable legislative or administrative standards for conducting an Inspection under the Ordinance.

102.    The Ordinance further provides that "[i]t shall be unlawful for any person to hinder, delay, resist or prevent the enforcement officer from having full

access to any place or premises upon which a violation of this Ordinance is believed to exist." *See* Ex. "A" at § 13(B).

103.   The Ordinance criminalizes a Homeowner's invocation of his or her Fourth Amendment rights.

104.   Further, the Ordinance fails to provide any guidelines, conditions, or procedures for what the Enforcement Officer and Township shall do if and when a Homeowner, including Plaintiffs, invokes his or her Constitutional rights pursuant to the Fourth Amendment and refuses to allow an Inspection by a government agent without probable cause.

105.   In essence, the Ordinance forces *all* Homeowners in the Township, including Plaintiffs, to waive their Constitutional rights against unlawful searches and seizures provided by the Fourth Amendment, and submit to discretionary inspections and warrantless searches without probable cause or due process, or be subject to criminal penalties.

**Section 17 of the Ordinance Provides for Violations, Penalties, and Costs for Failure to Comply with Any Provision of the Ordinance**

106.   The Ordinance provides that "[f]ailure to comply with any provision of this Ordinance, and/or failure to abate an activity, use and/or condition, shall be deemed a violation of this Ordinance and subject to the following penalties:"

a.      For a first violation, a written warning; and

      b.    For subsequent violations, upon judgment thereof by any Magisterial District Judge,  (1) a fine of up to $1,000 per day per violation; and (2) "costs of suit including, but not limited to, reasonable attorney fees, constable fees and staff time."

*See* Ex. "A" at § 17(A)-(B).

107.    Also, heavy-handedly, "[e]ach day of violation shall constitute a separate offense, for which a summary conviction may be sought."  *See* Ex. "A" at § 17(B).

108.    Further, "[a]ll judgments, administrative, enforcement, security firm or police response, and other costs, interest and reasonable attorney's fees collected for the violation of this Ordinance, shall be paid over to the Township."  *See* Ex. "A" at § 17(B).

109.    The Ordinance further provides that the Township shall revoke a Homeowner's Rental License/Permit for one year for two (2) violations resulting in convictions, and permanently for three (3) violations resulting in convictions.  *See* Ex. "A" at § 17(D).

## **The Ordinance is, in Effect, an Unlawful Zoning Ordinance**

110.    The Ordinance regulates the use and occupancy of real property throughout the Township as it relates to STRs.

111.   The Ordinance does not regulate the same exact activity for long-term rentals (30 days or more) or permanent residents.

112.   One of the Ordinance's aims is to "maintain a rural and recreational character of the Township for all residents, homeowners and visitors to enjoy." *See* Ex. "A" at § 2(F).

113.   The Ordinance is a restriction on a constitutionally protected property right, that is, the right to rent one's real estate.

114.   The Ordinance classifies "Dwelling" and "Dwelling Unit" as particular structures and particular uses, regulated by the Ordinance as it relates to STRs. *See* Ex. "A" at § 7.

115.   The Ordinance defines the occupation and use of a "Dwelling Unit." *See* Ex. "A" at § 7.

116.   The Ordinance creates a land-use classification of "Short-Term Rental." *See* Ex. "A" at § 7.

117.   The Ordinance requires a use-permit for any property within the Township to engage in the use of real property as an STR. *See* Ex. "A" at § 8.

118.   The Ordinance regulates the intensity and density of use and occupancy of real property within the Township by:

      a.      Defining the size of permitted bedrooms; (*See* Ex. "A" at § 7)

26

b.  Limiting the occupation of each permitted bedroom to two (2) persons; (*see* Ex. "A" at § 12(A)(1))

c.  Limiting the number of "day guests" allowed at one (1) time at any property engaged as an STR; (*see* Ex. "A" at § 12(A)(2))

d.  Limiting the use and occupancy of property engaged in STRs, in part, to account for septic capacity of on-site systems; (*see* Ex. "A" at § 12(A)(4)-(5))

e.  Limiting any increase in density by not permitting any additional bedrooms within a dwelling unit without "proper Township . . . approval; (*see* Ex. "A"  at § 12(A)(5))

f.  Limiting the number of overnight occupants and day guests at a property classified as an STR to not more than the number of "designated on-site parking spaces." (*see* Ex. "A" at § 12(A)(8))

119.  The Ordinance regulates on-site parking for properties classified as STRs, including:

a.  The number of spaces required for occupants and day-guests;

b.  The location of said parking spaces;

c.  The minimum number of parking spaces, per bedroom;

d.  The construction of said parking spaces;

e.  The dimensions of parking spaces; and

27

      f.     The location of said parking spaces relative to access to Township or State roads.

*See* Ex. "A" at § 12(A)(8).

120.   The Ordinance excludes occupancy of "recreational vehicles, camper trailers and tents" from the entirety of the Township as an STR.  *See* Ex. "A" at § 12(A)(13).

121.   The Ordinance creates an "enforcement officer" akin to a zoning enforcement officer.  *See* Ex. "A" at § 10.

122.   The Ordinance categorizes itself, and provides for, all of the aforementioned zoning regulations for the purposes of:

      a.     Protecting "all property owners and residents from the detrimental effects of unregulated short-term rentals";

      b.     Regulating and classifying a local tourism asset found within the Township;

      c.     Reduction of noise and disturbances;

      d.     Reduction of failing septic systems due to intense use;

      e.     Preservation of the Township's rural and recreational character; and

f.    Taking into account current conditions, including that certain Properties engaging in STRs have private on-site septic, which may be incompatible with intense occupancy.

*See* Ex. "A" at § 2.

123.    All of the foregoing purposes are statutorily within the purview of only a zoning ordinance.  *See* 53 P.S. §§ 10603, 10604.

124.    The Ordinance is, in effect, a zoning ordinance.

125.    The Township never adopted a comprehensive zoning ordinance in accordance with Pennsylvania Law.  *See for example,* 53 P.S. §§ 10603 - 10610.

## The Ordinance Enacts a Licensing Scheme that Creates a Prior Restraint on Plaintiff's Constitutional Rights

126.    Section 10 of the Ordinance entitled "Application for Short-Term Rental Permit," states "an application shall be filed with the designated Township official *before use of the property as a short-term rental*." *See* Exhibit "A" at § 10 (emphasis added).

127.    The licensing scheme is directed *only* toward Homeowners who engage in STRs.

128.    The licensing scheme places unbridled discretion in the hands of the local government official to determine approval or denial of the STR permit.

29

129.   Here, the Township Board of Supervisors "may appoint one (1) or more enforcement officers… to conduct inspections, make reports and administer other parts of this Ordinance…" *See* Exhibit "A" at § 12.

130.   Further, Section 10 of the Ordinance details the necessary information for the STR permit application. *See* Exhibit "A" at § 10.

131.   The Ordinance states that "the application shall contain… 12. Other information the enforcement officer deems reasonably necessary to administer this Ordinance." *See* Exhibit "A" at § 10(A)(17).

132.   Under this licensing scheme, the Township has great discretion, for example, a license may be denied for information the officer deems "reasonably necessary" for issuance.

133.   Furthermore, the licensing scheme fails to place limits, or safeguards, on the time within which the decision maker, here the Enforcement Officer, must issue the license.

134.   The Ordinance does not guarantee that the license, or permit, will be denied or approved within a specific short period of time.

135.   The Ordinance does not provide safeguards for a prompt judicial review if a licensure determination is not made within a reasonable time.

136.   Homeowners cannot engage in STRs before the approval of a STR permit, which creates a prior restraint on Plaintiffs' constitutionally protected rights.

30

137.   The Ordinance lacks sufficient safeguards against undue inhibition of protected expression, namely the First Amendment right to Assembly, and places an invalid prior restraint in violation of the Fourteenth Amendment.

138.   Under the Fourteenth Amendment the Township is not free to adopt whatever procedures it pleases for dealing with STRs without regard to the consequences for constitutionally protected actions.

**The Ordinance Fails to Provide for Adequate Notice of a Violation, Determinations of Applicability, and Appeal Rights**

139.   Section 16(B) of the Ordinance, which mandates the content of a Notice of Violation, fails to require that a Notice of Violation includes a Homeowner's right to appeal the Enforcement Officer's determination that the Homeowner violated the Ordinance.

140.   The Ordinance authorizes the Township to serve a Notice of Violation on a Homeowner – which can lead to a fine of up to $1,000 per day plus legal costs and a summary criminal offense (*see* Ex. "A" at § 17(B)) – merely by "publishing in the Township's official newspaper once each week for two (2) consecutive weeks." *See* Ex. "A" at § 17(A).

141.   Further, with respect to the Enforcement Officer, there are no procedures upon which a Homeowner may seek a determination of the applicability of a particular provision of the Ordinance, nor any timetable for which the

Enforcement Officer to make a determination, nor any process to appeal the Enforcement Officer's determination.

142.   Further, the Ordinance restricts a Homeowner's right to appeal to the Enforcement Officer's determinations "to deny application for, or to renew, a short-term rental license, or to revoke a short term rental license. . . ."  *See* Ex. "A" at § 18(A).

143.  In other words, the Ordinance *does not allow* appeals of the Enforcement Officer's determinations that result in a written warning, a fine of up to $1,000 per day plus costs of suit ("attorney fees, constable fees and staff time") but not revocation of a Permit.  *See* Ex. "A" at §§17(A) and (B) and 19(A).

## The Ordinance is Unconstitutionally Vague

144.   The Ordinance contains numerous vague and ambiguous terms and phrases that do not provide a reasonable opportunity to understand what conduct they prohibit.

145.   Further, these vague and ambiguous terms and phrases authorize, and even encourage, arbitrary, capricious, and discriminatory enforcement of the Ordinance.

146.   Vague and ambiguous terms and phrases in the Ordinance include but are not limited to:

      a.     "excessive noise" in Section 2(C);

    b.      "trespass disturbances" in Section 2(C);

    c.      "The Township Sewer Enforcement Officer['s] . . . concerns regarding the on-site septic system capabilities" in Section 2(C);

    d.      "the effect of failing septic systems" in Section 2(C);

    e.      "one (1) family" in Section 7;

    f.      "any of the conditions of the rental" in Section 8;

    g.      "use best efforts" in Section 12(A)(10);

    h.      "unreasonable noise or disturbances" in Sections 12(A)(9) and (10);

    i.      "disorderly conduct" in Sections 12(A)(10) and (11);

    j.      "any state law" in Sections 12(A)(10) and (11);

    k.      "Any lights used for exterior illumination" in Section 12(A)(12);

    l.      "believes" in Section 14(A);

    m.      "the conditions which constitute the violation and what action is required to abate the violation" in Section 16(B)(1);

    n.      "such time frame established by the enforcement officer based upon the nature of the  violation" in Section 16(B)(2);

    o.      "immediate action" in Section 16(B)(2);

p.    "public disturbance or in other cases as determined by the enforcement officer immediate action shall be required" in Section 16(B)(2);

**The Ordinance Unconstitutionally Restricts Plaintiffs' Right to Assembly**

147.   Section 12(A)(1) limits the number of overnight occupants, providing that "overnight occupants shall not … exceed two (2) persons per bedroom."

148.   Section 12(A)(2) provides that "[t]he maximum number of day guests allowed at any one (1) time shall be fifty (50%) percent of the maximum occupancy of the short term rental."

149.   Section 12(A)(1) and (2) of the Ordinance specifically targets the rights of      Homeowners who engage in STRs, including Plaintiffs, to assemble in or around private homes, without distinguishing between those Homeowners who have septic and those Homeowners on private sewer, such as Plaintiffs.

**The Ordinance Imposes an Unconstitutional Fee for a STR Permit**

150.   To obtain an STR Permit, the Township charges a $300 application fee ("Application Fee") and a $600 short-term rental license fee ("STR Fee"), for a combined $900 fee ("Total Fee"), down from $1,000 because the Township will deduct the $100.00 annual Sewage Enforcement Verification for Properties with a community sewer system, like Plaintiffs. *See* the Township's "Short-Term Rental and Land Use Permit Application Checklist," a true and correct copy of which is

34

attached as page 4 of Lake Township's Short Term Rental Registration Packet attached hereto as Exhibit "E." *See also*, Township Resolution 12-06-22-1 providing for deduction of the $100 annual Sewage Enforcement Verification for Properties with a community sewer system, a true and correct copy of which is attached as Exhibit "F."

151.   In addition, the Ordinance permits an inspection fee to be paid by the property owner if, after inspecting the property, the Township determines the application "is not consistent with Township records." *See* Ex. "A" at § 11(B).

152.   Upon information and belief, the expense to the Township to administer a single STR Permit is significantly less than the cost of the Total Fee.

## COUNT I
### The Ordinance Violates the Fourth Amendment Right
### to Be Free from Unreasonable Searches
### (42 U.S.C. § 1983 and 28 U.S.C. § 2201)

153.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

154.   The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

155.   The Fourth Amendment to the United States Constitution prohibits the government from conducting unreasonable searches and provides that warrants, based on probable cause, are required before searching a house.

35

156.   "Searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate [judge], are per se unreasonable. . . ." *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409 (2015).

157.   The Plaintiffs each maintain a legitimate expectation of privacy at their respective Properties located in the Township.

158.   Under Section 13 of the Ordinance, "All places and premises" in the Township are subject to Inspection at the Enforcement Officer's unfettered discretion.

159.   "All places and premises" includes those engaging in STRs and *not* engaging in STRs.

160.   The Ordinance fails to provide any guidelines, conditions, or procedures for when and how the Inspections are to occur.

161.   The Ordinance fails to subject the Inspections to constitutional restrictions, including the requirement for the issuance of a warrant based on probable cause.

162.   The Ordinance fails to provide "reasonable legislative or administrative standards for conducting an" Inspection under the Ordinance. *Commonwealth v. Tobin*, 828 A.2d 415, 423 (Pa. Commw. Ct. 2003) (citing *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 538 (1967).

36

163.    Accordingly, Plaintiffs are forced to choose between, on the one hand, consenting to warrantless searches at the Enforcement Officer's unfettered discretion, and on the other hand, subjecting themselves to fines of up to $1,000 per day plus legal fees, other costs, summary criminal conviction, and eventual revocation of a Permit.

164.    The Ordinance further permits the Township to charge a fee to the property owner if the inspection shows anything "not consistent" with the property owner's STR application. *See* Ex. "A" at § 11(B).

165.    The Ordinance deprives Plaintiffs of their Fourth Amendment Right to be free from unreasonable searches.

166.    The Township enacted the Ordinance under color of state law as the Ordinance represents the Township's official policy.

167.    The Ordinance is patently unconstitutional on its face.

168.    Plaintiffs further demand attorney's fees in accordance with 42 U.S.C. § 1988(b).

169.    The Ordinance is patently unconstitutional on its face.

**WHEREFORE**, Plaintiffs hereby demand judgment and an award of damages against the Township, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, attorney's

1997725-1

fees, and a declaration that the Ordinance is invalid and stricken, together with such other relief as the Court deems just.

## COUNT II
### The Ordinance Violates the First Amendment Right to Assembly
### (42 U.S.C. § 1983 and 28 U.S.C. § 2201)

170.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

171.   The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble. . . ."

172.   Section 12(A)(1) limits the number of overnight occupants, providing that "overnight occupants shall not … exceed two (2) persons per bedroom."

173.   Section 12(A)(2) provides that "[t]he maximum number of day guests allowed at any one (1) time shall be fifty (50%) percent of the maximum occupancy of the short term rental."

174.   Section 12(A)(1) and (2) of the Ordinance specifically targets the rights of STR Homeowners who engage in STRs, including Plaintiffs, to assemble in or around private homes, without distinguishing between  Homeowners who have septic and those Homeowners on private sewer, such as Plaintiffs.

175.   The Ordinance prohibits constitutionally protected conduct, i.e., the right to assembly in or around private homes during the day.

38

176.   The Township has no legitimate governmental interest in the regulation of non-commercial activity such as assembly in or around private homes.

177.   Further, the Ordinance creates an unlawful prior restraint on Plaintiffs' First Amendment right to assembly as it fails to impose a time limitation within which the Township must decide whether to issue a STR Permit.

178.   Furthermore, the licensing scheme fails to place limits on the time within which the decision maker, here the Enforcement Officer, must issue the license.

179.   The Ordinance does not guarantee that the license, or permit, will be denied or approved within a specific short period of time.

180.   The Ordinance does not provide safeguards for a prompt judicial review if a licensure determination is not made within a reasonable time.

181.   The licensing scheme is an unconstitutional infringement on Plaintiffs' right to assemble and is therefore facially invalid and unenforceable.

182.   Plaintiffs further demand attorney's fees in accordance with 42 U.S.C. § 1988(b).

**WHEREFORE**, Plaintiffs hereby demand judgment and an award of damages against the Township, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, attorney's

fees, and a declaration that the Ordinance is not valid, together with such other relief as the Court deems just.

## COUNT III
### The Ordinance Imposes an Unlawful Fee for a STR Permit
### (28 U.S.C. § 2201)

183.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

184.   To obtain an STR Permit, the Township charges a $300 Application Fee and a $600 STR License Fee for a combined total of a $900, i.e., the Total Fee. *See* Ex. "E."

185.   "If a license fee collects more than an amount commensurate with the expense of administering the license, it would become a tax revenue and cease to be a valid license fee." *Martin Media, a Calif. Corp. v. Hempfield Twp. Zoning Hearing Bd.*, 671 A.2d 1211 (Pa. Commw. Ct. 1996).

186.   Upon information and belief, the $900 Total Fee collects more than an amount commensurate with the expense of administering an STR Permit.

187.   Upon information and belief, the expense to the Township to administer an STR Permit is significantly less than the cost of the Total Fee.

188.   The Total Fee charged by the Township for an STR Permit is not reasonable.

189.   The Total Fee for a STR Permit is a tax.

190.   Because of the foregoing, the Total Fee for an STR Permit pursuant to the Ordinance is invalid and should be stricken.

**WHEREFORE**, Plaintiffs hereby demand judgment against the Township and a declaration that the Ordinance is not valid and is stricken, together with such other relief as the Court deems just.

## COUNT IV
### The Ordinance Violates the Fourteenth Amendment
### Right to Procedural Due Process
### (42 U.S.C. § 1983 and 28 U.S.C. § 2201)

191.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

192.   Section 16(B) of the Ordinance, which mandates the content of a Notice of Violation, fails to require that a Notice of Violation includes a Homeowner's right to appeal the Enforcement Officer's determination that the Homeowner violated the Ordinance.

193.   The Ordinance permits the Township to serve a Notice of Violation on a Homeowner – which can lead to a fine of up to $1,000 per day plus legal costs and a summary criminal offense (*see* Ex. "A" at § 18(B)) – merely by "publishing in the Township's official newspaper once each week for two (2) consecutive weeks." *See* Ex. "A" at § 16(A).

194.   With respect to the Enforcement Officer, there are no procedures upon which a Homeowner may seek a determination of the applicability of a particular

41

provision of the Ordinance nor any timetable for which the Enforcement Officer to make a determination, nor any process to appeal the Enforcement Officer's determination.

195.   Further, the Ordinance restricts a Homeowner's right to appeal to the Enforcement Officer's determinations "to deny application for, or to renew, a short-term rental license, or to revoke a short term rental license. . . ."  *See* Ex. "A" at § 18(A).

196.   In other words, the Ordinance *does not permit* appeals of the Enforcement Officer's determinations that result in only a written warning but not denial or revocation of a Permit.  *See* Ex. "A" at §§ 17(A), (B) and 18(A).

197.   Procedural due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Berger v. Phila. Parking Auth.*, 413 F. Supp. 3d 412, 419, n. 66 (E.D. Pa. 2019) (citing *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 314 (1950).

198.   "The fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Miller v. City of Phila.*, 174 F.3d 368, 373 (3d Cir. 1999) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

199.   The Ordinance's provisions for service of a Notice of Violation are not reasonably calculated to apprise Homeowners of an Enforcement Officer's determination of a violation and the Homeowner's right to appeal.

200.   Further, the Ordinance creates an unlawful prior restraint on Plaintiffs' Fourteenth Amendment right to procedural due process as it fails to impose a time limitation within which the Township must decide whether to issue a STR Permit.

201.   The Ordinance does not guarantee that the license, or permit, will be denied or approved within a specific short period of time.

202.   The Ordinance does not provide adequate safeguards for prompt judicial review of a denial of the permit.

203.   The Enforcement Officer has the ultimate discretion to deny an application based on information "reasonably necessary" for his or her determination.

204.   Due to the manner in which the Ordinance is drafted, an applicant never has a clear claim of right to a license so as to trigger the necessary safeguards of judicial review or court intervention.

205.   On its face, for all these reasons, the Ordinance fails to provide a Homeowner an opportunity to be heard at a meaningful time and in a meaningful manner before being deprived of his or her property rights.

1997725-1

206.   Plaintiffs further demand attorney's fees in accordance with to 42 U.S.C. § 1988(b).

**WHEREFORE**, Plaintiffs hereby demand judgment and an award of damages against the Township, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, attorney's fees, and a declaration that the Ordinance is not valid, together with such other relief as the Court deems just.

<u>COUNT V</u>
**The Ordinance Violates the Plaintiffs' Rights to**
**Substantive Due Process under the Pennsylvania Constitution**
**(28 U.S.C. § 2201)**

207.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

208.   Article I, Section 1 of the Pennsylvania Constitution protects the right of landowners "to use their property as they wish, unfettered by governmental interference except as necessary to protect the interests of the public and of neighboring property owners. . . ." *In re Realen Valley Forge Greenes Assocs.*, 838 A.2d 718, 727 (Pa. 2003).

209.   "Property owners have a constitutionally protected right to enjoy their property which may be reasonably limited by zoning ordinances that are enacted by municipalities pursuant to their police power, i.e., governmental action taken to

protect or preserve the public health, safety, morality, and welfare." *C & M Developers, Inv. V. Bedminster Twp. Zoning Hrg. Bd.*, 820 A.2d 143, 150 (Pa. 2002).

210.   For all the reasons alleged hereinabove, the Ordinance is, in effect, an unlawful zoning ordinance.

211.   "[I]n reviewing an ordinance to determine its validity, courts must generally employ a substantive due process inquiry, involving a balancing of landowners' rights against the public interest sought to be protected by an exercise of the police power." *C&M Developers v. Bedminster Twp. Zoning Hearing Bd.*, 820 A.2d 143, 151 (Pa. 2002) (citation and internal quotations omitted).

212.   "The substantive due process inquiry . . . must accord substantial deference to the preservation of rights of property owners. . . ." *In re Realen*, 838 A.2d at 728 (citing *Hopewell Twp. Bd. of Supervisors v. Golla*, 452 A.2d 1337, 1341-42 (Pa. 1982)).

213.   The Ordinance's provisions, as alleged hereinabove, are arbitrary, capricious, unreasonable, and have no substantial relationship to promoting the public health, safety, and welfare.

214.   The Township is utilizing the Ordinance to over-regulate, beyond the reach of the legitimate and constitutionally permissible exercise of police power, for the reasons alleged herein, and including regulation of the number of visitors permitted at all STRs, bedroom and dwelling occupancy limits at all STRs, vague

and undefined terms within the Ordinance, warrantless searches, parking requirements, and other zoning requirements, despite not adopting a comprehensive zoning ordinance as required by Pennsylvania law.

215.   The Ordinance is subterfuge for the Township to exert focused and excessive regulation, authority and power over those who engage in STRs, including the Plaintiffs.

216.   The confiscatory and exclusionary impact of the Ordinance on Plaintiffs' rights greatly outweighs any public interest served by the Ordinance.

**WHEREFORE**, Plaintiffs hereby demand judgment and an award of damages against the Township, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, attorney's fees, and a declaration that the Ordinance is invalid, together with such other relief as the Court deems just.

## <u>COUNT VI</u>
### The Ordinance Violates the Plaintiffs' Rights to Substantive Due Process under the Fourteenth Amendment
### (42 U.S.C. § 1983 and 28 U.S.C. § 2201)

217.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

218.   The due process clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

219.   "While on its face this constitutional provision speaks to the adequacy of state procedures, the Supreme Court has held that the clause also has a substantive component."  *Nicholas v. Pennsylvania State Univ.*, 227 F.3dd 133, 139 (3d Cir. 2000).

220.   Substantive due process demands that a legislative act be rationally related to some legitimate government purpose.

221.   The Ordinance's provisions that regulate the intensity and density of use and occupancy of real property within the Township do not serve any legitimate state interest without distinguishing between those Homeowners who have septic and those Homeowners on private sewer, such as Plaintiffs.

222.   For example, without limitation, the following provisions fail to serve any legitimate state interest when applied, as written, to all Homeowners, including Plaintiffs:

> a.   The Homeowner must limit the number of overnight occupants to a maximum of two (2) per bedroom;
>
> b.   The maximum number of "day guests" allowed at one (1) time shall be fifty (50%) percent of the maximum occupancy of the STR;
>
> c.   The number of bedrooms shall not exceed the number of bedrooms approved for the dwelling on the sewage permit;

47

d.      Where there is no sewage permit on records the STR shall be limited to the number of bedrooms that have been "historically maintained;"

e.      The STR shall also have at least one (1) other habitable room containing a minimum of one hundred twenty (120) square feet;

f.      Occupancy of recreational vehicles, camper trailers and tents shall not be allowed;

*See* Ex. "A" at § 12 generally.

223.   The Ordinance irrationally holds Plaintiffs to the same overreaching regulatory requirements as those Homeowners with a septic system.

224.   The Ordinance violates substantive due process under the Fourteenth Amendment.

225.   Plaintiffs are entitled to reasonable attorney's fees under to 42 U.S.C. § 1988(b).

**WHEREFORE**, Plaintiffs hereby demand judgment and an award of damages against the Township, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, attorney's fees, and a declaration that the Ordinance is invalid and is stricken, together with such other relief as the Court deems just.

1997725-1

## COUNT VII
### The Ordinance is Unconstitutionally Vague
### (28 U.S.C. § 2201)

226.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

227.   "A statute is void on vagueness grounds if it:  (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;  or  (2)  authorizes  or  even  encourages  arbitrary  and  discriminatory enforcement."  *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008)).

228.   The Ordinance contains numerous vague terms and phrases throughout its various sections, including but not limited to:

      a.      "excessive noise" in Section 2(C);

      b.      "trespass disturbances" in Section 2(C);

      c.      "The  Township  Sewer  Enforcement  Officer['s]  .  .  .concerns regarding the on-site septic system capabilities" in Section 2(C);

      d.      "the effect of failing septic systems" in Section 2(C);

      e.      " one (1) family" in Section 7;

      f.      "any of the conditions of the rental" in Section 8;

      g.      "use best efforts" in Section 12(A)(10);

      h.      "unreasonable noise or disturbances" in Sections 12(A)(10) and (11);

i.     "disorderly conduct" in Sections 12(A)(10) and (11);

j.     "any state law" in Section 12(A)(10) and (11);

k.     "Any lights used for exterior illumination" in Section 12(A)(12);

l.     "reason to believe" in Section 13(A);

m.     "the conditions which constitute the violation and what action is required to abate the violation" in Section 16(B)(1);

n.     "such time frame established by the enforcement officer based upon the nature of the  violation"  in Section 16(B)(2);

o.     "immediate action" in Section 16(B)(2);

p.     "public disturbance or in other cases as determined by the enforcement officer immediate action shall be required" in Section 16(B)(2);

229.   Because of the numerous vague terms and phrases throughout its various sections, the Ordinance fails to provide people of ordinary intelligence an opportunity to understand what conduct it prohibits.

230.   There are no set of circumstances under which the Ordinance, with its numerous vague terms and phrases, would be valid, and therefore, must be stricken.

**WHEREFORE**, Plaintiffs hereby demand judgment against the Township, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, attorney's fees, and a declaration that

the Ordinance is invalid and is stricken, together with such other relief as the Court

deems just.

## COUNT VIII
### Request for Federal Declaratory Judgment for Abuse of Police Power
### (28 U.S.C. § 2201)

231.   Plaintiffs hereby incorporate all preceding paragraphs as though set

forth herein at length.

232.   Pursuant to 28 U.S.C. § 2201:

> In a case of actual controversy within its jurisdiction . . .
> any court of the United States, upon the filing of an
> appropriate pleading, may declare the rights and other
> legal relations of any interested party seeking such
> declaration, whether or not further relief is or could be
> sought. Any such declaration shall have the force and
> effect of a final judgment or decree and shall be reviewable
> as such.

233.   Declaratory relief will terminate the controversies or remove the

uncertainties as to whether the Township abused its police power by adopting and

enacting the Ordinance declaring a nuisance *per se*, making it void and

unenforceable.

234.   Here, Plaintiffs respectfully request that this Honorable Court declare

the STR Ordinance invalid and unenforceable because, by declaring any violation

of the Ordinance a nuisance per se, it is an abuse of the Township's police power.

### *The Township's police power*

235.   Lake Township is a Second Class Township.

236.   The Ordinance is invalid and unenforceable because Lake Township, a Second Class Township, possesses only those rights which have been expressly granted to it by the Pennsylvania legislature. *Penn Ridge Coal, LLC v. Blaine Twp.*, Civil Action No. 08-1452, 2009 U.S. Dist. LEXIS 84428 (W.D. Pa. Sep. 16, 2009).

237.   As a Second Class Township, the Township does not possess general police powers, but only powers which are granted to it by the legislature.

238.   Here, the Township acted outside of its prescribed statutory authority by adopting, enacting, and declaring *any* violation of the Ordinance a nuisance.

239.   Specifically, in enacting the Ordinance, the Township relies on 53 P.S. § 66506 – General Powers, 53 P.S. § 66517 – Building and Housing Regulations, 53 P.S. § 66527 – Public Safety, and 53 P.S. § 66529 – Nuisances. *See* Exhibit "A" at § 3.

240.   53 P.S. § 66506  relating to General Powers states:

> The board of supervisors may make and adopt any ordinances, bylaws, rules and regulations not inconsistent with or restrained by the Constitution and laws of this Commonwealth necessary for the proper management, care and control of the township and its finances and the maintenance of peace, good government, health and welfare of the township and its citizens, trade, commerce and manufacturers.

241.   53 P.S. § 66517 relating to Building and Housing Regulations states:

> The board of supervisors may enact and enforce codes and ordinances to govern and regulate the construction, alteration, repair, occupation, maintenance, sanitation,

52

lighting, ventilation, water supply, toilet facilities, drainage, use and inspection of all buildings and housing constructed, erected, altered, designed or used for any use or occupancy and the sanitation and inspection of land in accordance with Article XVII-A.

242.  53 P.S. § 66527 relating to Public Safety states:

The board of supervisors may adopt ordinances to secure the safety of persons or property within the township and to define disturbing the peace within the limits of the township.

243.  53 P.S. § 66529 relating to Nuisances, provides that:

The board of supervisors may by ordinance prohibit nuisances, including, but not limited to, the storage of abandoned or junked automobiles, on private and public property and the carrying on of any offensive manufacture or business.

244.  The Township allegedly enacted this Ordinance for the "general welfare of its citizens . . . to protect all property owners and residents from the detrimental effects of unregulated short-term rentals. . . ."  *See* Ex. "A" at § 2.

245.  Based on the foregoing, the Township enacted the Ordinance which forbids a property owner from engaging in STRs without first being approved for a permit.

*The Ordinance creates an unlawful and unenforceable nuisance per se*

246.  The Ordinance creates an unlawful and unenforceable nuisance *per se.*

247.   As alleged in the foregoing paragraphs, as a Second Class Township, the Township does not possess general police powers, but only powers which are granted to them by the legislature.

248.   The Township, in enacting the Ordinance, relies on 53 P.S. § 66529 relating to nuisances, which provides:

> The board of supervisors may by ordinance prohibit nuisances, including, but not limited to, the storage of abandoned or junked automobiles, on private and public property and the carrying on of any offensive manufacture or business.

*See* Ex. "A" at § 3.

249.   Specifically, the Ordinance states, "*Any* violation of any provisions of this Ordinance ***shall be declared to be a public nuisance*** for which the owner shall be subject to such violations as more specifically enumerated within this Ordinance."

*See* Ex. "A" at § 6 (emphasis added).

250.   Even more, the Ordinance states:

> Failure to comply with any provision of this Ordinance, and/or failure to abate an activity, use and/or condition, shall be deemed a violation of this Ordinance and subject to the following penalties: … a fine of not more than $1,000.00 per day of violation . . . for which a summary conviction may be sought.

*See* Ex. "A" at § 17(B) (emphasis added).

251.   On its face, the Ordinance creates a nuisance *per se*.

252. The Township, as a Second Class Township, does not have the authority to declare STRs, or any of the numerous provisions stated throughout the Ordinance, a nuisance *per se*.

253. Pennsylvania courts have described a "nuisance *per se*" as "an act or use of property of a continuing nature offensive to, and legally injurious to, health and property, or both." *SPTR, Inc. v. City of Phila.*, 150 A.3d 160, 169 (Pa. Commw. Ct. 2016) (citation omitted).

254. As related to business, its inherent qualities or elements must be such that it must reasonably follow, in a particular locality or surrounding, that there will be an injury to property or a discomfort to the individual, with a resulting injury to property. *Id*.

255. Pennsylvania has described the following circumstances attending a business or property give rise to a nuisance *per se*:  offensive or noxious odors or smells, undue noise of crowds, music, motors, gambling, improper construction of buildings, and the like, that are injurious to morals, life, health, and property. *Id*.

256. An ordinance must be interpreted to prohibit or regulate nuisances in fact and not merely nuisances per se. *Teal v. Haverford*, 578 A.2d 80 (1990).

257. The Township has the power to prohibit nuisances in fact, but it does not have the power to declare a nuisance *per se* by stating "any violation of any provision[s] of this Ordinance shall be a public nuisance."  *See* Ex. "A" at § 6.

258.   The Ordinance, by declaring a nuisance *per se*, is a gross abuse of the Township's police power.

259.   Because of the Township's gross abuse of police power, by declaring *any* violation of the Ordinance a nuisance, several Plaintiffs have chosen, or may choose, not to engage in STRs.

260.   Similarly, because of the Township's arbitrary, capricious, and gross abuse of police power, by declaring *any* violation of the Ordinance a nuisance, several Plaintiffs have chosen, or may choose, not to engage in STRs in fear they would be subject to fines and criminal penalties for any violation of the vague and ambiguous Ordinance or they are severely limited to the groups and families to which they are permitted to rent on a short term basis.

261.   As a result, Plaintiffs are, and will continue to be, harmed by the Township's unlawful Ordinance.

262.   A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling particular legal issues between the parties and thereby afford relief from the uncertainty and controversy giving rise to this proceeding.

**WHEREFORE**, Plaintiffs hereby demand judgment against the Township, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, attorney's fees pursuant to 28

U.S.C.S. §§ 2201-2202 and applicable law, and a declaration that the Ordinance is invalid and is stricken, together with such other relief as the Court deems just.

**COUNT IX**
**Request for Federal Declaratory Judgment because**
**the Ordinance is Arbitrary and Capricious**
**(28 U.S.C. § 2201)**

263.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

264.   Plaintiffs request this Honorable Court to declare that the STR Ordinance is not valid because its enactment is arbitrary and capricious and not rationally related to a legitimate government interest.

265.   The Ordinance regulates the use of land based on the identity and nature of the owner, primarily whether the Homeowner engages in STRs.

266.   The Ordinance bears no relation to the Township's purpose as stated in the Ordinance itself.  *See* Ex. "A" at § 2.

267.   The Ordinance does not help to promote the health, safety, and general welfare of the community.

268.   The Ordinance improperly and unlawfully creates a de facto zoning ordinance by regulating the use and enjoyment of the land.

269.   The Ordinance arbitrarily and capriciously discriminates against and restricts Homeowners that engage in STRs because, among other things, it requires:

57

a.    The Homeowner must limit the number of overnight occupants to a maximum of two (2) per bedroom;

b.    The maximum number of "day guests" allowed at one (1) time shall be fifty (50%) percent of the maximum occupancy of the STR;

c.    The number of bedrooms shall not exceed the number of bedrooms approved for the dwelling on the sewage permit;

d.    Where there is no sewage permit on records the STR shall be limited to the number of bedrooms that have been "historically maintained;"

e.    The STR shall also have at least one (1) other habitable room containing a minimum of one hundred twenty (120) square feet;

f.    Occupancy of recreational vehicles, camper trailers and tents shall not be allowed;

*See generally* Ex. "A" at § 12.

270.  Any violation of the foregoing "Operational Standards and Conditions," or the many others contained throughout this Ordinance shall be declared a nuisance, pursuant to the Ordinance.  *See* Ex. "A" at §§ 6 and 12.

271.  The foregoing "conditions," including, but not limited to, severely restrictive occupancy limits, requirements for sewage permits, and substantial

parking restrictions are not rationally related to the stated purpose of the Ordinance, primarily "that all units meet fire and safety codes."  *See* Ex. "A" at § 2.

272.   It is upon information and belief that the Township does not have a fire and safety code.

273.   Similarly, all Plaintiffs in this suit have private sewage systems, and are therefore not subject to the unlawful restrictions and sewage permit requirements in the Ordinance.

274.   Because Plaintiffs are on a private sewer system, they are not subject to the overbroad stated purpose of restricting STRs, namely:

> "The Township Sewer Enforcement Officer has concerns regarding the on-site septic system capabilities, and the effect of failing septic systems upon ground water and surface water entering streams, lakes and rivers from untreated sewage effluent being emitted from overcharged systems."

*See* Ex. "A" at § 2(C).

275.   However, the Ordinance arbitrarily applies the stated reason for occupancy limits, limitations on day guests, parking, and the size of certain rooms within each home, on the overcharged septic system, which is not applicable to Plaintiffs.  *See* Ex. "A" at § 2(C).

276.   Similarly, the Ordinance arbitrarily and capriciously discriminates between Homeowners that engage in STRs and Homeowners that engage in long-term rentals, or permanent residents.

277.   The Ordinance does not achieve its stated purpose of assuring all units meet fire safety codes, comply with sewage requirements, and/or maintain a rural recreational character of the Township.

278.   Instead, the Ordinance only serves to violate the property rights and Constitutional rights of Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter a Declaratory Judgment and enter an Order that:

a.   Strikes the Ordinance because it is arbitrary, capricious, and not rationally related to a legitimate government interest;

b.   Strikes the Ordinance because it arbitrarily and capriciously imposes restrictions on Plaintiffs that are unconstitutional and inapplicable;

c.   Strikes the Ordinance because the Ordinance does not achieve its stated purpose of assuring all units meet fire safety codes, comply with sewage requirements, and/or maintain a rural recreational character of the Township; and

d.   Awards attorney's fees pursuant to 28 U.S.C.S. §§ 2201-2202 and applicable law, costs, and expenses, and that the Court grant whatever relief is just and appropriate.

60

## COUNT X
### Request for Federal Declaratory Judgment for
### Abuse of Police Power – Invalid Zoning Ordinance
### (28 U.S.C. § 2201)

279.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

280.   The Ordinance is not a valid exercise of the Township's police power granted by the legislature, but rather a gross abuse of authority.

281.   The Ordinance is an attempt to engage in zoning because it restricts the use of land.

282.   The Township cannot engage in zoning, as it has not complied with Pennsylvania law in adopting such an ordinance.

283.   The Township enacted the Ordinance in an attempt to zone under the guise of a mere nuisance ordinance.

284.   The Ordinance is a zoning regulation because it regulates the intensity and density of use and occupancy of real property within the Township by:

   a.   Defining the size of permitted bedrooms;

   b.   Limiting the occupation of each permitted bedroom to two (2) persons;

   c.   Limiting the number of "day guests" allowed at one (1) time at any Property engaged as an STR;

     d.      Limiting the use and occupancy of property engaged in STRs, in part, to account for septic capacity of on-site systems;

     e.      Limiting any increase in density by not permitting any additional bedrooms within a dwelling unit without "proper Township . . . approval;

     f.      Further classifying a dwelling unit as a "one (1) bedroom unit confined to two (2) persons occupancy" if there are no internal, partitioned rooms;

     g.      Limiting the number of overnight occupants and day guests at a property classified as an STR to not more than the number of "designated on-site parking spaces."

285.   The Ordinance regulates on-site parking for Properties classified as STRs, including:

     a.      The number of spaces required for occupants and day-guests;

     b.      The location of said parking spaces;

     c.      The minimum number of parking spaces, per bedroom;

     d.      The construction of said parking spaces;

     e.      The dimensions of parking spaces;

     f.      The location of said parking spaces relative to access to Township or State roads.

286.   The Ordinance excludes occupancy of "recreational vehicles, camper trailers and tents" from the entirety of the Township as an STR.

287.   The Ordinance creates an "enforcement officer" akin to a zoning enforcement officer.

288.   The Ordinance categorizes itself, and provides for, all of the aforementioned zoning regulations for the purposes of:

    a.    Protecting "all property owners and residents from the detrimental effects of unregulated short-term rentals;"

    b.    Regulating and classifying a local tourism asset found within the Township;

    c.    Reduction of noise and disturbances;

    d.    Reduction of failing septic systems due to intense use;

    e.    Preservation of the Township's rural and recreational character; and

    f.    Taking into account current conditions, including that certain properties engaging in STRs have private on-site septic, which may be incompatible with intense occupancy.

289.   All of the foregoing purposes are statutorily within the purview of only a zoning ordinance.  *See* 53 P.S. §§ 10603, 10604.

290.   The Ordinance is, in effect, a zoning ordinance.

291.  The Township never adopted a comprehensive zoning ordinance applicable to the entirety of the Township, thus, except for STRs, the remainder of the Township is un-zoned.  53 P.S. § 10605.

292.  The Ordinance is an impermissible, unauthorized zoning ordinance, in whole, or in part.

293.  The Ordinance must be declared void and stricken.

294.  A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling particular legal issues between the parties.

**WHEREFORE**, Plaintiffs hereby demand judgment against the Township, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, attorney's fees pursuant to 28 U.S.C.S. §§ 2201-2202 and applicable law, and a declaration that the Ordinance is invalid and is stricken, together with such other relief as the Court deems just.

## COUNT XI
### Permanent Injunction

295.  Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

296.  On the basis of the foregoing, Plaintiffs possess a clear right to relief.

297.  A permanent injunction may be granted when 1) the party seeking the injunction has established that its right to relief is clear; 2) an injunction is necessary to avoid an injury where there is no adequate remedy at law; and 3) a greater injury

64

will result from refusing rather than granting injunctive relief. *Temple Univ. v. White*, 941 F.2d 201 (3d Cir. 1991); *see also Oberholzer v. Galapo*, 274 A.3d 738.

298.   For the foregoing reasons, asserted in great detail, Plaintiffs' right to relief is clear.

299.   Here, an injunction is necessary to avoid an injury to Plaintiffs that cannot be compensated by monetary damages, specifically, but without limitation, the following:

a)   The Ordinance places a prior restraint on Plaintiffs' First Amendment Right to Assembly by creating a permitting scheme directed *only* toward Homeowners who wish to engage in STRs.

b)   The Ordinance places a prior restraint on Plaintiffs' First Amendment Right to Assembly by creating a scheme which places unbridled discretion in the hands of the local government official.

c)   The Ordinance places a prior restraint on Plaintiffs' First Amendment Right to Assembly by creating a scheme that fails to place limits on the time within which the decision maker must issue the license prior to a Homeowner engaging in STRs.

d)   The Ordinance places a prior restraint on Plaintiffs' First Amendment Right to Assembly by limiting the occupancy and guests permitted to gather in private homes.

e)   The Ordinance violates Plaintiffs' Substantive Due Process Rights.

f)   The Ordinance violates Plaintiffs' Procedural Due Process Rights.

g)   The Ordinance requires Homeowners to submit to warrantless searches of their property or be subject to criminal penalties.

h)   The Township's gross abuse of the police power, declaring any violation of the Ordinance a Nuisance *per se*.

i)   The Ordinance is arbitrary and capricious.

j)   The Ordinance is unconstitutionally vague and ambiguous.

k)   The Ordinance imposes an unconstitutional fee.

300.   Greater injury will result from refusing rather than granting the requested injunctive relief.

301.   An injunction will maintain the status quo, as it was at the last peaceable moment prior to the Township's enactment of the unconstitutional, vague, and ambiguous Ordinance.

302.   Plaintiffs are, and will continue to be, harmed by the Township's clear violation of Homeowners' rights.

303.   Such permanent injunctive relief is necessary to prevent the legal wrongs as alleged in the foregoing paragraphs of the Complaint.

304.   On the basis of the foregoing, Plaintiffs are entitled to injunctive relief in the form of a permanent injunction enjoining and restraining the Township from enacting this unconstitutional, vague, and ambiguous Ordinance.

**WHEREFORE**, Plaintiffs hereby demand entry of an Order and permanently enjoining and restraining the Township from enforcing the Ordinance, and awarding Plaintiffs all such other relief as the Court deems just.

## COUNT XII
### Request for Declaratory Judgment - The Ordinance Violates the Dormant Commerce Clause
### (28 U.S.C. § 2201)

305.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

306.   A requirement for owner-residency within thirty (30) miles, or requiring the engagement of a "local contact person," is a violation of the United States Constitution Article I, § 8, Clause 3, generally known as the Commerce Clause.

307.   The Commerce Clause gives Congress the power "[t]o regulate Commerce . . . among the several States."

67

308.   Although this is phrased as an affirmative power, the courts have long recognized "that it also limits the power of the States to erect barriers against interstate trade." *Dennis v. Higgins*, 498 U.S. 439, 446 (1991) (quoting *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 35 (1980)).

309.   This passive or negative aspect of the Commerce Clause (or Dormant Commerce Clause) prevents states (or their subdivisions such as cities) from discriminating against out-of-state interests.

310.   In this context, discrimination "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994).

311.   "[W]hen a state statute discriminates against interstate commerce, it will be struck down unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Yamaha Motor Corp. v. Jim's Motorcycle, Inc.*, 401 F.3d 560, 567 (4th Cir. 2005) (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992)).

312.   There is no question that engaging in the leasing of real estate constitutes interstate commerce. *See, e.g.*, 15 U.S.C. §1703 (forbidding certain sales or leases of real property in interstate commerce).

68

313.   The Ordinance requires that each Homeowner shall reside within thirty (30) miles of their property, or designate a "local person, property manager or agent as a local contact person." *See* Ex. "A" at § 9.

314.   This language plainly and facially forbids the residents of other states, outside the thirty (30) mile radius of the Township, from renting out their homes for short terms without first engaging in business with a "local contact person."

315.   The Township is approximately thirty (30) miles from the borders of New Jersey and New York to the Northeast, East, and Southeast, thereby essentially prohibiting residents of those states, including those Plaintiffs who reside in those states, from participating in STRs without engaging in business with a "local contact person."

316.   The following Plaintiffs are domiciled in states other than Pennsylvania, over thirty (30) miles from their property:

   a)  A&Z Home Buyer, LLC, and its members – New York

   b)  Lori Adam – New Jersey

   c)  Kyle Berger – New York

   d)  LeeAnna and Otto Chan – New York

   e)  Glitter PA Investments, LLC, and its members – New Jersey

   f)  92 S LLC, and its members – New York

   g)  Desiree Garcia and Fernando Pineros Rincon – New Jersey

69

h)      Robert Hebron – New York

i)      Bradley Kreider – New Jersey

j)      Karen Kroog – New York

k)      Jennifer Lenzo – New York

l)      Thais Martinez – New York

m)     Michele McFadden – Connecticut

n)      Michele McFadden and Pamela Gerolimatos – Connecticut

o)      Ryan McNamee – New York

p)      Rafael Poueriet – New Jersey

q)      Samantha Rex – New York

r)      Dustin Rex – New York

s)      Roamingwood Investment Group, LLC, and its members – New Jersey

t)      Christopher Serrano – New York

u)      Kalpana M. Singh-Castillo – New York

v)      Justin Spall – New Jersey

w)      The Woodhill Hideout LLC, and its members – New Jersey

x)      Shelby Viasso – New Jersey

317.   An ordinance that establishes unfavorable treatment for short-term rentals in which the owner does not live in close proximity to their property, has the effect of discriminating against out-of-state owners of real property.

318.   While a local owner may or may not prefer to reside on-site, or within a close proximity while engaging in short-term leasing of their property, they are able to make that choice.

319.   However, it is simply not possible for an out-of-state owner, like many Plaintiffs, to reside within the arbitrary thirty (30) miles of their Property.

320.   A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling particular legal issues between the parties and thereby afford relief from the uncertainty and controversy giving rise to this proceeding.

**WHEREFORE**, Plaintiffs hereby demand judgment against the Township, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs of suit, attorney's fees pursuant to 28 U.S.C.S. §§ 2201-2202 and applicable law, and a declaration that the Ordinance is invalid and is stricken, together with such other relief as the Court deems just.

## COUNT XIII
### Supplemental State Law Claim
### Tortious Interference with Existing and Prospective Contracts

321.   Plaintiffs hereby incorporate all preceding paragraphs as though set forth herein at length.

322.   The Pocono Mountains are a popular tourist destination for families for outdoor recreation and weekend getaway.

323.   It is upon information and belief that the Township received pressure from individuals and communities, including board members of the Hideout, to restrict the ability of "outsiders" to engage in STRs within the Township.

324.   It is upon information and belief that members of the Hideout Board of Directors communicated with Township supervisors, and attended and participated in Township meetings regarding the Ordinance.

325.   It is upon information and belief that in July of 2022, member(s) of the Hideout Board of Directors communicated and coordinated with representatives of Lake Township regarding the Hideout's enactment, implementation, and enforcement of the STR bylaw, to aid in the Township's adoption and enactment of the Ordinance.

326.   Shortly thereafter, the Township cobbled together the Ordinance restricting STRs, under the guise of "health, safety, and general welfare" of the community.

327.   As stated in the foregoing allegations, the Ordinance has a stated purpose, among other things, of addressing concerns regarding the on-site septic system capabilities and consequences of an overcharged septic system.

328.   The provision regarding septic tanks is not applicable to Plaintiffs, as all Plaintiffs own properties on private sewer systems.

329.   Furthermore, the enactment date of the Ordinance coincided, almost to the exact day, with the bylaw regulation of the Hideout that imposed similar restrictions on STRs in the Hideout recreational community.

330.   A contractual or prospective contractual relationship existed between Plaintiffs and individuals and families interested in engaging in STRs.

331.   The Township took purposeful action, intended to harm that relationship by enacting the Ordinance which violates the property rights of Plaintiffs.

332.   As a result of the Township's actions, Plaintiffs have sustained significant monetary damages and damages to their property rights and Constitutional rights.

333.   The Township lacks privilege or justification to adopt, enact, and enforce the Ordinance.

334.   The Township acted intentionally to harm Plaintiffs, by enacting the Ordinance interfering, restricting, and encumbering Plaintiffs' ability to contract with guests and engage in STRs.

335.   The Township acted improperly by:

a)   Adopting, enacting, and enforcing a facially invalid Ordinance that contains blatant Constitutional violations.

b)   Adopting, enacting, and enforcing a mere nuisance ordinance that, in effect, acts as a de facto zoning ordinance.

c)   Failing to follow the procedures of adopting, enacting and enforcing a zoning ordinance, because although the Ordinance is classified as a mere nuisance ordinance, in effect, it regulates and acts as a de facto zoning ordinance.

d)   Intentionally adopting this Ordinance as a mere nuisance ordinance, which has the force and effect of a zoning ordinance, and bypassing the stringent requirements of a zoning ordinance, knowing that the Township does not have a zoning code.

e)   Clearly targeting individuals engaged in STRs without proper justification or purpose.

f)   Violating the property rights of Plaintiffs by restricting, limiting, and encumbering their ability to engage in STRs.

g)    Violating the Constitutional rights of Plaintiffs by infringing on their First Amendment rights, Fourth Amendment rights, and Fourteenth Amendment Rights of Substantive Due Process and Procedural Due Process.

h)    Adopting, enacting, and enforcing the Ordinance to eliminate "outsiders" through the regulation of STRs.

i)    Adopting and enacting the Ordinance, which has a stated purpose to "assure that all units meet fire and safety codes…and carbon monoxide, to assure the safety of all occupants." The Township does not have a fire safety code. Furthermore, the Ordinance does not once mention fire safety, carbon monoxide, or the health and general welfare of the community. The true purpose is to limit "outsiders" by restricting STRs.

j)    Violating the property rights of Plaintiffs and interfering with their ability to contract with prospective guests.

k)    Adopting and enacting an ordinance that directly interferes with Plaintiffs' ability to engage in STRs and contract with prospective guests by restricting their occupancy, charging substantial fees, subjecting Plaintiffs to warrantless searches, and

75

violating Plaintiffs' Constitutional rights, including their First Amendment right to assemble.

336.   The Township knew that their adoption and enactment of the Ordinance had no colorable legal foundation.

337.   The Township acted with corrupt motives by intentionally adopting and enacting this Ordinance under the guise of a mere nuisance ordinance, when in effect, it is a de facto zoning ordinance.

338.   The Township also acted with corrupt motives, to achieve its goal of restricting STRs and limiting "outsiders," by intentionally adopting and enacting this ordinance, which acts as a de facto zoning ordinance, knowing that the Township does not have a zoning board.

339.   As a direct and proximate result of the Township's unlawful interference, Plaintiffs have and will suffer substantial financial injury and harm as alleged herein.

340.    The Township's outrageous conduct entitles Plaintiffs to an award of punitive damages.

**WHEREFORE**, Plaintiffs hereby demand judgment against the Township, in an amount in excess of the Court's jurisdictional and compulsory arbitration thresholds, together with interest, costs, punitive damages, together with such other relief as the Court deems just.

**TIMONEY KNOX, LLP**

By: _Eric B. Smith_

　　Eric B. Smith, Esquire
　　PA Attorney I.D. No. 81023
　　Christopher M. McMonagle, Esquire
　　PA Attorney I.D. No. 316043
　　Vincent R. Cocco, Esquire
　　PA Attorney I.D. No. 321062
　　400 Maryland Drive, P.O. Box 7544
　　Fort Washington, PA 19034
　　215-646-6000
　　esmith@timoneyknox.com
　　cmcmonagle@timoneyknox.com
　　vcocco@timoneyknox.com
Date: February 9, 2023　　　*Attorneys for Plaintiffs*

77